# FRANK LEON BONNER *v.* STATE OF MARYLAND

[No. 1309, September Term, 1978.]

*Decided October 11, 1979.*

The cause was argued before MOYLAN and MACDANIEL, JJ., and HOWARD S. CHASANOW, Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Isaac S. Kershner, Assigned Public Defender,* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Olga Bruning, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CHASANOW, J., delivered the opinion of the Court.

On July 2, 1977, at approximately 1:00 a.m., Anthony Brown was robbed by two men in a dimly lit alley in Baltimore.

While one held him from behind, the other took Brown's money out of his pockets. Brown saw the man who stood in front of him for approximately four to five minutes during the fifteen to twenty minute ordeal, but was unable to see the man holding him from behind. After the robbery, Brown reported the incident to the police and gave a description of the robber whom he saw: "Male, black, sixteen to eighteen, very light complected, short hair, tan shorts, sweat socks, sneakers, known as 'Reds'." [1] At a subsequent interview with police, Brown told the officers that "Reds" frequented the area of Gilmore Street and Fairmount Avenue. At a pre-trial hearing and at trial, Brown testified that he had seen his attacker some two weeks before the robbery when his assailant was in a fight with another person.

Subsequent to the interview on the evening of July 2, Officers Rabold and McWhirter, while on patrol, observed the appellant with another person. Rabold knew the appellant as "Reds" Bonner and the appellant fit Brown's description of the assailant, so Rabold approached the appellant and his companion. The officers advised the pair why they were stopped and the two suspects voluntarily rode with the officers to the victim's home. When they arrived at Brown's

---

1. At both the trial and the pre-trial suppression hearing, Brown testified that he did not give the police a name or nickname of his assailant. In ruling on the motion, the trial judge must have concluded that the testimony of the police officers concerning the description given was accurate.

home, Rabold asked Brown to go to the car and see if anyone in the car looked like either of the persons who robbed him. Brown complied and while standing some five to six feet away from the vehicle, identified the appellant as the man who was in front of him during the robbery. Brown testified that the police officer then asked both men in the back of the car to get out and he then asked Brown, "Which one was it?" and Brown again identified the appellant.

In the Criminal Court of Baltimore, a motion to suppress identification testimony was denied and the case proceeded to trial where Brown identified the appellant as the person who robbed him, saying, "I got a look at his face." [2]

During closing arguments, counsel for the appellant was precluded by the court from reading to the jury a statement from an unidentified source, "that positive identification is one of the most dangerous types of testimony known to us." The prosecutor, during her closing argument, was permitted, over objection, to tell the jury that the victim was not used to taking the witness stand, although the court recognized that there was no evidence indicating that this was the first time the complainant had ever testified.

The appellant also objected to the State's Attorney's statement in closing argument that the appellant's nickname was "Reds." The objection was sustained, and the jury was advised that there was no evidence indicating that the appellant's nickname was "Reds." Thereafter, when the State again referred to the appellant as "Reds" and to where "Reds" lived, the appellant objected and moved for a mistrial. The objection was sustained, but a mistrial was denied. Nevertheless, the court again instructed the jury that there was no evidence that the appellant's nickname was "Reds" or that he lived in the 1500 block of Fairmount Avenue, and any comments by the prosecutor to the contrary should be disregarded.

Finally, the appellant objected to the prosecutor's

---

2. At the suppression hearing, Brown identified the appellant and was asked, "Are you remembering him because he's the person that was brought to you at your house later that day?" Brown responded, "I identified him because he's the one that robbed me."

characterization of the robbery as a "very, very ugly experience" and the statement by her that "this is the kind of thing, a one on one, that goes on everyday in the streets of Baltimore. It's the kind of thing that is keeping people prisoners in their homes." The court overruled the appellant's objections.

## The Show-up

The appellant contends that the extrajudicial show-up was impermissively suggestive and that the trial court erred in denying the motion to suppress. In order to determine the admissibility of an out of court identification, we must look to the standard established by the United States Supreme Court. The Court has noted that the primary evil to be avoided in a case of an out of court identification is a very substantial likelihood of misidentification, and "... it is the likelihood of a misidentification which violates a defendant's right to due process...." *Neil v. Biggers,* 409 U.S. 188, 198 (1972). Reliability, not suggestiveness, is the linchpin in the determination of admissibility. If in the totality of the circumstances, the out of court identification possesses indicia of reliability, the identification is admissible even if suggestive. *Manson v. Brathwaite,* 432 U.S. 98 (1977). In order to evaluate the likelihood of a misidentification, we must consider several factors, including the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *Neil v. Biggers, supra; Manson v. Brathwaite, supra; Foster and Forster v. State,* 272 Md. 273, cert. den. 419 U.S. 1036 (1974); *Godwin v. State,* 38 Md. App. 716 (1977), *rev'd other grounds* 284 Md. 85 (1978); *Dobson v. State,* 24 Md. App. 644 (1975), cert. den. 275 Md. 747 (1975).

In the instant case, Brown, the witness, had an excellent opportunity to view the perpetrator at the time he was robbed. During the course of the robbery, the perpetrator

stood in front of and in full view of his victim, for four to five minutes. Moreover, since the robber stood in front of Brown while he took the money out of his victim's pockets, Brown had the opportunity to view him from a very close range. Immediately after the incident, Brown gave the police a detailed description of his assailant and the area of the city frequented by his attacker. (See fn. 1)

At the pre-trial show-up, Brown identified the appellant from five to six feet away, even though the appellant was seated next to another person, who the trial judge noted was similar in appearance. In addition, the robbery occurred on July 2, 1977, at approximately 1:00 a.m. and the confrontation took place at approximately 10:00 p.m. on the same day.

Although prior knowledge of an assailant's identity is not one of the specific factors set forth in *Neil* and its progeny, we feel it is relevant to the determination of the reliability of the extrajudicial confrontation. If one has a previous acquaintance with another who robs him, even a suggestive confrontation would not result in a likelihood of misidentification, since the victim knew who the criminal was at the time of the crime because of the previous acquaintance. That type of identification, based on a prior familiarity with the criminal, has a high degree of reliability and is less likely to be influenced by a suggestive identification procedure. It is unquestionable that Brown had seen his attacker prior to the robbery, and that during the robbery he recognized his attacker as being the same man he had seen two weeks prior to the incident. Brown identified the appellant at the show-up not because of any suggestive procedures used, but because he knew the appellant to be both the person he saw two weeks before the robbery, as well as the person who robbed him.

Under the totality of the circumstances in the instant case, we do not believe that the show-up created a substantial likelihood of misidentification. The witness had a good opportunity to view his assailant; he gave police a detailed description; he demonstrated certainty at the time of the confrontation that the appellant was the man who robbed him; the time between the crime and the show-up was not substantial; and he had a familiarity with the appellant which

predated the robbery. Since the show-up did not create a substantial likelihood of misidentification, we hold that evidence of the extrajudicial confrontation was properly admitted.

## The In-Court Identification

The appellant next argues that the in-court identification was erroneously admitted. The appellant correctly states the rule, that once taint is shown as a result of an illegal or impermissively suggestive confrontation, the burden shifts to the State to show by clear and convincing evidence that the identification had a source independent of the viewing and that the viewing is not the proximate cause of the identification. *Mills v. State,* 19 Md. App. 614 (1974); *Smith and Samuels v. State,* 6 Md. App. 59 (1969), cert. den. 397 U.S. 1057 (1970).

First, we have concluded above that the show-up was not illegal or impermissively suggestive, since there was no likelihood of misidentification, and it is axiomatic that the in-court identification was properly admitted. Secondly, even if, *arguendo,* the confrontation were unlawful, the State has shown by clear and convincing evidence that the in-court identification was based on sources independent of the challenged show-up. The robbery itself provided an ample opportunity for the victim to get a good view of his assailant, who stood in front of Brown for four to five minutes. Moreover, as stressed by the trial court and discussed above, the victim had a prior familiarity with the identity of the appellant before the robbery. Finally, during the pre-trial hearing, Brown testified that he was identifying the appellant based on what he remembered from the robbery and not based on the show-up.

We fully agree with the trial court that there existed clear and convincing evidence to indicate that the in-court identification was based on sources independent of the show-up. *Dobson v. State, supra.* Consequently, the judicial identification was correctly admitted by the trial court.

## Closing Arguments

The appellant also contends that the trial judge erred in refusing to allow his defense counsel to read from some unidentified source during closing argument the statement that "positive identification testimony is one of the most dangerous types of testimony known to us." Under our State Constitution, the jury is the trier of both law and fact in criminal matters, Md. Const. Art. XV § 5 (1950), and although this provision permits attorneys to argue law to the jury, it does not allow attorneys to read facts from other cases. *Brown v. State,* 222 Md. 290 (1960).

In determining whether the court erred in precluding the appellant's counsel from reading the aforementioned quote to the jury, we must decide whether the argument was one of law or of fact. Arguing law includes stating, quoting, discussing or commenting upon a legal proposition, principle, rule or statute. The right to argue law to the jury does not include reading from books not recognized as authoritative by the legal profession, nor reading theories as to suggested legal reforms, nor reading statements of facts from prior cases, nor does it include reading statements or opinions which only have evidentiary bearing on the factual issues in the trial. See, *Brown v. State,* 222 Md. 290 (1960); *Pierce v. State,* 34 Md. App. 654 (1977), cert. den. 434 U.S. 907 (1978), Annot., 67 A.L.R.2d 245 (1950).

"Fact" is defined as meaning a "thing done; an action performed or an incident transpiring; an event or circumstance, an actual occurrence." *Black's Law Dictionary,* 531 (5th Ed. 1979). In distinguishing law from fact, it is said that "law is a principle; fact is an event. Law is conceived; fact is actual." *Id.,* at 532.

We conclude that the passage attempted to be read by the appellant's counsel was not a statement of law, but was an argument of factual opinion and was properly excluded by the trial court. The proposed passage was merely an opinion by the author of the statement as to the relative value of identification testimony. In addition, the appellant's counsel failed to identify the source of the quote and therefore, the

court was unable to ascertain whether the source was recognized as authoritative by the legal profession. See, *Phillips v. State,* 6 Md. App. 56 (1968). We note that the appellant was not precluded from arguing that the identification in his case was weak and therefore not credible; he was only precluded from reading to the jury another person's belief as to the value of identification testimony. The appellant's counsel in fact argued at great length that ". . . [an identification is] one of the weakest kinds of evidence that there is."

The appellant's final contention on appeal concerns the State's closing argument, which the appellant maintains presents three separate grounds for reversal. In discussing each of the three alleged abuses by the State's Attorney, we must keep in mind the rule as enunciated in *Wilhelm v. State,* 272 Md. 404, 412 (1974):

> "[A]s to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range. . . . Moreover, if counsel does not make any statement of fact not fairly deducible from the evidence his argument is not improper, although the inferences discussed are illogical and erroneous."

The court also stated:

> "[T]he conduct of the trial must of necessity rest largely in the control and discretion of the presiding judge and an appellate court should in no case interfere with that judgment unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party." *Id.,* at 413; *Esterline v. State,* 105 Md. 629, 637 (1907).

During the prosecutor's closing argument to the jury, she stated that the victim is "not used to taking the stand in front

of you people", implying that the witness had never testified in court before. The appellant's objection based on the lack of evidence indicating that it was the witness' first time testifying was overruled by the court as being unimportant in the light of the broad latitude given closing argument. We agree. We find no abuse of discretion by the trial judge in overruling the objection, and, in any event, the statement was not so flagrant as to have deprived the appellant of a fair trial. *Wilhelm v. State, supra.*

Later, in closing argument, the prosecutor stated: "We know for sure that the victim now knows that the nickname of this man here is 'Reds'." Finding no evidence that the appellant's nickname was "Reds," the court sustained defense counsel's objection to the statement and instructed the jury to disregard the remark. After that exchange, the prosecutor again referred to the appellant as "Reds," and again appellant objected and moved for a mistrial. The court denied the motion for a mistrial and instructed the jury: ". . . there is no evidence in this case that the Defendant has a nickname of 'Reds' or that the Defendant lives in the 1500 block Fairmount Avenue. . . ." Although there was no direct evidence linking the appellant with the name of "Reds" and the aforementioned residence, there was indirect evidence through which such a logical link was fairly deducible. Officer Bland testified that the victim told him he knew his assailant as "Reds," who lived on Fairmount Avenue, and the victim identified the appellant as his assailant. Thus, the inference is that "Reds" was the assailant, and the assailant was the appellant. Therefore, that portion of the State's summation was based on reasonable and legitimate inferences drawn from the evidence. The question of whether or not to grant a mistrial is within the sound discretion of the trial judge, *Collins v. State,* 14 Md. App. 674 (1972), cert. den. 409 U.S. 882 (1972), and will only be disturbed on appeal when there is an abuse of that discretion. No such abuse is present in this case.

Finally, the appellant challenges the prosecutor's comment to the jury that what happened to the victim was ". . . a very, very ugly experience. This is the kind of thing, a one on one,

that goes on everyday in the streets of Baltimore. It's the kind of thing that is keeping people prisoners in their own homes." Although we do not condone these comments, we do not feel that the trial judge abused his discretion in overruling the objections. In *Matthews v. State,* 3 Md. App. 555 (1968), the prosecutor's comment that the jury "acts as a protective force to the citizens of Montgomery County" was not held to have constituted prejudicial error. In *Guajardo v. State,* 363 S.W.2d 259 (Tex. Crim. App. 1963), cited with approval in *Wilhelm v. State, supra,* the Texas Court of Criminal Appeals permitted the prosecutor to argue to the jury in opening statement: "So bear that in mind, that you are the conscience of your community. You are going to speak out for this community and let the rest of the state know exactly what this community thinks about people that kill law officers." *Id.,* at 433. The *Wilhelm* court noted that ". . . we must give due weight to the conclusion of the trial judge, who witnesses the presentation and heard the actual remarks — in the context in which they were made, in the trial arena — and who found no prejudice." *Id.,* at 436. In the instant case, the trial judge did not abuse his discretion when he ruled that the remarks by the prosecutor were not prejudicial and that they did not require remedial action.

*Judgment affirmed.*
*Costs to be paid by appellant.*