531 A.2d 1313

**Phillip Sean PARKER**

**v.**

**STATE of Maryland.**

**No. 168, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 14, 1987.

Peter M. Levin, Assigned Public Defender of Towson (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Patricia Storch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty., for Baltimore County and Teresa Angle, Asst. State's Atty., for Baltimore County, on brief, Towson), for appellee.

Submitted before MOYLAN, WILNER and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Phillip Sean Parker, appellant, was convicted by a jury in the Circuit Court for Baltimore County of robbery with a deadly weapon, robbery, use of a handgun in the commission of a crime of violence, and theft. He was sentenced to six years imprisonment for the robbery with a deadly weapon count, the robbery and theft counts merging into that count, and to a five year consecutive sentence for the handgun violation. On this appeal from the judgments thus entered, appellant presents four questions for our resolution:

1. Was appellant's show-up identification tainted?

2. Was appellant given adequate *Miranda*[1] warnings and did he intelligently waive his *Miranda* rights?

3. Was the evidence legally sufficient to prove criminal agency?

4. Was appellant denied a fair cross-section of jurors?

For the reasons that follow, we find no error, and, therefore, affirm.

### 1.

Appellant's initial complaint is that his "show-up" identification by the victim about one half hour after the robbery was tainted by an impermissibly suggestive procedure. The procedure was impermissibly suggestive, he asserts, because the victim was permitted to view him in handcuffs (a point disputed by the police testimony) and standing next to a police car and a police officer. He argues that the "show-up" identification should have been suppressed and, because the in-court identification was insufficiently independent of the "show-up" identification, it too should have been suppressed.

The evidence relevant to this issue reveals that the victim was robbed by two men while with a friend in an apartment complex. He testified that appellant, whom the victim knew from the neighborhood, pointed a gun at him and demanded that he remove his coat. Appellant and the other man, who was also known to the victim, took the coat and fled. The victim called the police and reported the robbery, in the process giving the police appellant's name and address. When the police located appellant, the victim was brought to the scene where he identified appellant as one of his assailants. Both the victim and his friend unhesitatingly identified appellant in court as one of the robbers. Appellant's defense, presented through his own testimony and

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that of his girlfriend and a male friend, was that he was elsewhere at the time when the robbery took place.

■ Being mindful that reliability, not suggestiveness, is determinative of the admissibility of a pretrial identification, we have independently reviewed, pursuant to our constitutional mandate, the five factors enunciated by the Supreme Court[2] to be used to evaluate the likelihood of a misidentification. *See Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers, supra; Foster & Forster v. State*, 272 Md. 273, 288, 323 A.2d 419, *cert. denied*, 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974); *Bonner v. State*, 43 Md.App. 518, 521, 406 A.2d 646 (1979); *Godwin v. State*, 38 Md.App. 716, 725, 382 A.2d 596 (1977), *rev'd on other grounds*, 284 Md. 85, 403 A.2d 785 (1978). That review, without the necessity of resolving the conflict in testimony as to whether appellant was handcuffed when the victim identified him, convinces us that there was no error in this case. In reaching this conclusion, we place significant emphasis on the fact that the testimony is undisputed that the victim knew appellant and, indeed, identified him by name and address when reporting the crime. We are also persuaded by the facts that the "show-up" identification occurred shortly after the crime and that the victim's identification was both immediate and certain.

### 2.

■ Appellant's next contention—that there was insufficient evidence that he was given adequate *Miranda* warnings or that he had intelligently waived his *Miranda*

---

**2.** *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), set out the factors which a reviewing court is to consider in determining the admissibility of an extrajudicial identification. They are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation.

rights—is equally without merit. Significant to the resolution of this contention is appellant's concession that he *was* advised of his *Miranda* rights. He asserts, however, that such advice came only after he had been interrogated and processed. Appellant's assertion need not have been, as, indeed, it was not, accepted by the court. The court had before it testimony by a police officer that, although appellant refused to sign a written statement or waiver of rights form, appellant was advised of his *Miranda* rights prior to giving an oral statement. Considering the evidence in the light most favorable to the State, as we must, we conclude that the court did not err in permitting the police to relate that statement to the jury.

3.

■ Appellant's "sufficiency of the evidence" argument attacks "the caliber of identification evidence submitted at trial ... to establish his criminal agency in the crimes of which he was convicted." In his view, such evidence lacked "probative force, resulting in insufficient evidence to [convict]." This issue has not been preserved for our review.

Md. Rule 4–324(a) provides, in pertinent part:

A defendant may move for judgment of acquittal ... at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant *shall state with particularity all reasons why the motion should be granted....* (emphasis added)

Under this rule, moving for judgment of acquittal on the grounds of insufficiency of the evidence, without argument, does not preserve the issue for appellate review. *See State v. Lyles*, 308 Md. 129, 135, 517 A.2d 761 (1986), *aff'g Lyles v. State*, 63 Md.App. 376, 492 A.2d 959 (1985). *See Dillsworth v. State*, 66 Md.App. 263, 267, 503 A.2d 734 (1986) *aff'd*, 308 Md. 354, 519 A.2d 1269 (1987). Although appellant's counsel moved for judgment of acquittal at the end of all the evidence, when asked by the trial court if he wished to be heard on the motion, he merely stated, "I'll submit"; he did not "state with particularity all the reasons why the

motion should be granted." Accordingly, he did not preserve the sufficiency of the evidence issue for appellate review. *Lyles v. State, supra;* Md. Rule 4–324(a).

4.

After the jury, expressly found to be acceptable to the State and the defense, had been impaneled, and sworn, appellant, who is Black, moved for a mistrial or dismissal on the ground that the State, by exercise of its peremptory challenges, "excluded or challenged the only two Black jurors on the panel, thus ensuring that there would be an all white jury." The trial court held a hearing on the motion, at which the State gave its reasons for peremptorily striking the two jurors. The court then denied appellant's motion, ruling: "I can't say under the circumstances in this case that the State has exercised racial peremptories."[3] Appellant urges that "the State's strikes were too coincidental to be accepted as happenstance and that in effect defendant was denied a fair cross-section in the jury panel."

 A defendant may trigger an equal protection inquiry into a prosecutor's motive in the exercise of peremptory challenges, in the context of an individual case, by establishing a *prima facie* case of purposeful discrimination in the selection of the venire. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986); *Chew v. State,* 71 Md.App. 681, 688, 694, 527 A.2d 332 (1987). The objection to the prosecutor's exercise of peremptories, as well as the *prima facie* case, must occur, however, in a timely manner. *See Chew,* 71 Md. at 698, 527 A.2d 332, in which we specifically noted that the defendant there made a timely challenge to the prosecutor's use of his peremptory strikes. Unfortunately, we did not specify when during the proceeding the challenge was made; instead, we cited *Weekly v. State,* 496 N.E.2d 29 (Ind.1986) and *Williams v.*

---

**3.** The State explained that it exercised the peremptories on the basis that the Baltimore County State's Attorney office had prosecuted immediate family members of each of the jurors.

*State,* 712 S.W.2d 835 (Tex.1986), both holding that a challenge to a prosecutor's exercise of peremptories is preserved for appeal if a defendant objects "both when the prosecutor uses a peremptory challenge to exclude a member of a cognizable racial group and also after the jury has been selected but before it has been sworn." *Chew,* 71 Md.App. at 698, n. 7, 527 A.2d 332. *See also Batson,* 106 S.Ct. at 1715, in which the challenge occurred before the jury was sworn.

> To establish a *prima facie* case,
> the defendant must first show that he is a member of a cognizable racial group, ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of the mind to discriminate" ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the impaneling of petit jury, as in the selection of the venire, raises the necessary inference of the purposeful discrimination.

*Batson,* 106 S.Ct. at 1723. Moreover, "a defendant may establish a *prima facie* case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* 106 S.Ct. at 1722–23.

It is clear from the foregoing that a *prima facie* case of the unconstitutional exercise of peremptory challenges cannot be established until the relevant facts and circumstances are known and reflected in the record of the proceeding. It follows, therefore, that an objection premised upon such unconstitutional exercise appropriately may

not be raised, or, at the least, is not cognizable, until the factual predicate for it exists. Ordinarily the predicate will not exist until the last member of a cognizable racial group has been stricken or the twelfth juror has been seated, although not sworn. Only then, when all of the facts and circumstances necessary to a ruling on the objection are before it, is the court enabled to assess meaningfully the validity of the objection.[4]

It is well settled in Maryland that an appellant waives any objection he may have to the jury impaneled if he fails to state his objection to, and expresses satisfaction with, the panel prior to the jury being sworn. *White v. State,* 300 Md. 719, 731, 481 A.2d 201 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985); *Calhoun v. State,* 297 Md. 563, 579, 468 A.2d 45 (1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 *reh'g denied.* 467 U.S. 1268, 104 S.Ct. 3564, 82 L.Ed.2d 865 (1984). In each of these cases, the defendant sought reversal of his conviction on the ground that the court's denial of his challenge of a prospective juror for cause impaired the exercise of his peremptories. Prior to the jury being sworn, however, each defendant had expressed satisfaction with the jury impaneled. The Court of Appeals held that each defendant, by that action, waived any error. *See Holmes v. State,* 65 Md.App. 428, 439–40, 501 A.2d 76 (1985), *rev'd on other grounds, State v. Holmes,* 310 Md. 260, 528 A.2d

---

**4.** While the prosecutor's peremptory striking of even one member of a cognizable racial group may arouse suspicion that the challenge was exercised unconstitutionally, an objection at that point, although perhaps technically proper, is not, practically speaking, either meaningful or helpful. A prosecutor's explanation for striking a member of a cognizable racial group, which, when taken alone, may be considered by the court to be racially neutral and therefore acceptable, may not be so considered when viewed in light of his or her subsequent use of peremptory challenges. This is so because at the later time, when the court addresses whether the prosecutor's explanations are pretextural, it will have before it, and may take account of, any and all contradictions, inconsistencies, etc. in the prosecutor's exercise of peremptory challenges as may be apparent from the record.

1279 (1987) (court's error in refusing to conduct voir dire into racial prejudice held waived by defendant's "failure to object, coupled with his expressing satisfaction with the jury impaneled.").

■ A challenge to a prosecutor's exercise of peremptories is but one step removed from a challenge to a court's ruling on a motion to strike a prospective juror for cause. Therefore, the determination whether it has been preserved for review on appeal presents an issue comparable to that addressed in *White* and *Calhoun.* We hold, consistent with Md. Rule 4–312(e)[5], governing challenges for cause, that an objection on the ground of unconstitutional exercise of peremptory challenges is waived unless an objection is made prior to the swearing of the jury and unless the court, for good cause shown, permits it to be made at a later time.

■ Turning to the case *sub judice,* the record reflects that there were only two Blacks on the jury and that both were peremptorily excluded by the State, as its first two strikes, about halfway through the proceeding. The factual predicate for a *prima facie* case of unconstitutional use of peremptory challenges was present at that time. Nevertheless, appellant's objection to the prosecutor's exercise of the State's peremptories came only after the jury had been impaneled, appellant had specifically pronounced the panel "acceptable", and the jury had been sworn. It came too late. Furthermore, appellant offered no reason for failing to raise the issue earlier and the court made no finding of good cause in that regard. The issue was waived.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

**5.** Md.Rule 4–312(e) provides:
A party may challenge an individual juror for cause. A challenge for cause shall be made and determined before the jury is sworn, or thereafter for good cause shown.